**[J-17-2015] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| IN RE: THE THIRTY-FIFTH STATEWIDE INVESTIGATING GRAND JURY | : No. 197 MM 2014<br>:<br>:<br>:<br>: |
| PETITION OF: ATTORNEY GENERAL, KATHLEEN G. KANE | :<br>: ARGUED: March 11, 2015<br>:<br>: |

## CONCURRING OPINION

**MR. JUSTICE STEVENS**                    **DECIDED: March 31, 2015**

Until the Legislature provides appropriate statutory guidelines for the appointment of special prosecutors, we look to the Pennsylvania Constitution, In re Dauphin County Fourth Investigating Grand Jury, 610 Pa. 296, 19 A.3d 491 (2011), and the former Independent Counsel Authorization Act, infra, for such guidance.

In this case there are serious questions that the proceedings have been tainted by vagueness in the manner of the appointment of the special prosecutor, a lack of due process afforded to the Attorney General, overbroad authority given to and exercised by the special prosecutor, and questionable sealing of records. My concern is with the process, not with any one individual.

I join the Majority's holding that, as a general matter, a supervising judge of a grand jury has the inherent authority to appoint a special prosecutor where there are colorable allegations that the sanctity of the grand jury process has been breached by an attorney for the Commonwealth and that those allegations warrant investigation.

On May 29, 2014, William R. Carpenter, the supervising judge, filed an order under seal[1] in the Montgomery County Court of Common Pleas indicating that, after a "preliminary investigation," there are "reasonable grounds to believe a further more substantive investigation is warranted into allegations that statewide Grand Jury secrecy may have been compromised." Supervising Judge's Order filed 5/29/14 at 1.

The supervising judge did not provide any information as to the scope of his "preliminary investigation," what facts led him to conclude there were reasonable grounds to believe further investigation was necessary, or as to the target of the investigation. Additionally, in this same order, the supervising judge appointed Thomas E. Carluccio, Esquire, as the special prosecutor and set forth a broad scope of Attorney Carluccio's duties.

However, the supervising judge provided no information as to the manner in which Attorney Carluccio was chosen to fulfill this position and, more specifically, gave no information regarding Attorney Carluccio's qualifications to act in the capacity of a special prosecutor as would have been required under the now sunsetted Independent Counsel Authorization Act.[2]

---

[1] Although this order was originally filed by the supervising judge under seal, by per curiam order entered on January 20, 2015, this Court directed the unsealing of all the filings in this matter, including the Attorney General's appellate brief. The Attorney General attached a copy of the May 29, 2014 order to her appellate brief as Exhibit A.

[2] In 1998, the Legislature passed the Independent Counsel Authorization Act (ICAA), 18 Pa.C.S. § 9301 et seq., which provided for, inter alia, a panel comprised of one judge from the Commonwealth Court and two judges from the courts of common pleas, who were chosen by lot. The ICAA gave the Commonwealth's general counsel authority to appoint a special investigator to conduct a preliminary investigation, and to appoint an independent counsel where there were "reasonable grounds to believe further (continued…)

The record additionally contains a letter, dated May 29, 2014, authored by the supervising judge and sent to former Chief Justice Ronald D. Castille with a notation that a carbon copy was being sent to Attorney Carluccio.[3]  In the letter, the supervising judge indicated he was "appointing a Special Prosecutor to investigate an allegation that secret Grand Jury information from a prior Grand Jury was released by someone in the Attorney General's Office."  Supervising Judge's Letter dated 5/29/14 at 1.  He specifically indicated he was appointing Attorney Carluccio as the special prosecutor.  See id.

Apparently unsure of his own authority to take this action, the supervising judge concluded the letter by indicating "[p]lease advise if you feel that I am in error or have exceeded my authority as the Supervising Grand Jury Judge."  Id.  The record provides no further information on this point.

---

(…continued)
investigation [was] warranted."  18 Pa.C.S. § 9315(a)(1).  In appointing an independent counsel, the ICAA set forth qualifications to be considered by the panel. 18 Pa.C.S. § 9319.  Additionally, the ICAA set forth a legislatively-approved process to investigate criminal allegations made against the Attorney General.  However, the ICAA contained a sunset provision providing for the expiration of the statute in 2003, and there has been no further legislative action in this regard.

[3] The Attorney General attached a copy of the May 29, 2014 letter to her appellate brief as Exhibit B.  Also, the letter was referenced in open court by the special prosecutor and several Justices at this Court's March 11, 2015 oral argument session.

The next flaw in the advancement of this case is evidenced by the fact that there was a hearing from which a standing protective order against the Attorney General was entered.[4]

I find nothing in the record to indicate the Attorney General's Office had an opportunity to be heard at a meaningful time and in a meaningful manner prior to the entry of the protective order. Thus, questions arise as to whether due process was provided to the Attorney General and her office prior to the entry of a protective order.

In In re Dauphin County, supra, a special master (referred to as a "special prosecutor") was appointed. But in that case the authority of the "special prosecutor" was severely limited, provided for due process and was careful to be in accord with the separation of powers principle,[5] unlike the appointment of the special prosecutor in this case. Here, the special prosecutor took on a role of a magnitude more properly reserved for an elected district attorney and well beyond the purpose of determining the source of illegal leaks of grand jury information.

Finally, I have concerns about the sealing process, which has occurred throughout this case. While the sealing of grand jury matters in the lower courts and this Court generally serves a legitimate purpose, such as protecting witnesses and the

---

[4] The protective order was recognized and referenced by the special prosecutor in his answer to the Attorney General's quo warranto petition filed with this Court. The answer was filed as a pleading initially under seal; however, as indicated supra, by order filed on January 20, 2015, this Court unsealed such filings, including the answer. Additionally, in open court at the March 11, 2015 oral argument session, there were discussions among several of the Justices and the special prosecutor of the aforementioned hearing. In particular, this Justice questioned the special prosecutor regarding the holding of an ex parte hearing.

[5] See Article V, Sections 1 and 10 of the Pennsylvania Constitution.

integrity of the process, not all grand jury material automatically requires secrecy. Particularly when there are allegations that a specific grand jury investigation is politically or personally motivated, as has been alleged by the Attorney General in this case, a blanket and automatic sealing of all materials is inappropriate.

Simply put, transparency promotes accountability.

In light of the now-lapsed Independent Counsel Authorization Act, supra, and the absence of an analogous statute providing Legislative guidance as to the manner and structure of such appointments, I write separately to urge the Legislature to revisit this matter. It is imperative that the process of the appointment of a special prosecutor in a case such as this be in accordance with the constitutionally required separation of powers.

There must be defined limits on the powers of a special prosecutor. While I agree a supervising judge has the authority to appoint a special prosecutor, here the scope of the powers of the special prosecutor took on the role of a de facto district attorney, which in my opinion, is not permissible. The process undeniably becomes more complicated when the judicial branch is making such an appointment with the intent of investigating the Attorney General, who is an elected member of the executive branch.

This case illustrates the need for the Legislature to provide a transparent, orderly method of appointing special prosecutors, sensitive to due process rights and appropriate transparency, thereby creating a fair and open system. In my view, this would lead to greater consistency and confidence in the appointment of special prosecutors and, ultimately, in the judicial process.